IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BR TANK, LLC, | § | |
| | § | |
| Plaintiff and | § | |
| Counterdefendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2110 |
| | § | |
| HOLCIM (US) INC., | § | |
| | § | |
| Defendant and | § | |
| Counterplaintiff. | § | |

## MEMORANDUM OPINION AND ORDER

BR Tank, LLC, brings this action against Holcim (US) Inc., seeking a declaratory judgment that a lease between the parties for terminal facilities in Louisiana is still valid (Docket Entry No. 1). Holcim has moved to transfer this action to the United States District Court for the Middle District of Louisiana pursuant to 28 U.S.C. § 1404(a) (Docket Entry No. 3). For the reasons explained below, the court will grant Holcim's Motion to Transfer.

## I. Background

This action concerns a dispute over whether a lease of terminal facilities along the Mississippi River in Baton Rouge, Louisiana, is still valid. BR Tank is a Louisiana limited liability company with its principal place of business in Houston,

Texas.[1]  Holcim is a Delaware corporation with its principal place
of business in Waltham, Massachusetts.[2]

   Holcim, formerly known as Holnam, Inc., is the owner of the
disputed facilities in Baton Rouge.[3]  On November 10, 1993, Holcim
leased a portion of its facilities to Hall-Buck Marine, Inc.[4]  In
1998 Hall-Buck Marine, Inc., changed its name to Kinder Morgan Bulk
Terminals ("Kinder Morgan").[5]  On August 4, 2003, Kinder Morgan
notified Holcim of its intent to renew the lease for another five
years pursuant to article II of the lease, thereby extending the
effective date of the renewed lease to July 4, 2009.[6]  This amended
lease provided:

>    2.   Lessee shall have the right to renew the present
> Lease for a further term of ten (10) years upon giving
> Lessor written notice to such effect not less than one
> hundred eighty (180) days prior to the termination of the
> sixteen (16) year primary term of this Lease; and Lessee,
> if it so renews this Lease for said additional term of
> ten (10) years, shall have the right to again renew this
> Lease for a second ten (10) year term, upon giving Lessor
> written notice to such effect not less than one hundred

---

[1]Original Complaint, Docket Entry No. 1, ¶ 2.

[2]Id. ¶ 3.

[3]Memorandum in Support of Motion to Transfer, Docket Entry
No. 3, p. 1.

[4]Lease Agreement, Exhibit B to Defenses, Answer and
Counterclaim, Docket Entry No. 4.

[5]First Amendment to Lease Agreement, Exhibit B to Defenses,
Answer and Counterclaim, Docket Entry No. 4, p. 11 of 14.

[6]Id.

eighty (180) days prior to the termination of the first
ten (10) year extension term of this Lease.[7]

The lease and the amendment are both governed by Louisiana law.[8]

On February 1, 2007, Kinder Morgan assigned the lease, and all
of its rights and obligations thereunder, to BR Tank.[9] Holcim was
a party to the assignment agreement.[10]  The agreement, which
provides that it is governed by Louisiana law,[11] made no change to
the length of the lease or the terms of renewal.  The agreement
required BR Tank to construct a new roadway and a new security
fence on the premises.[12]

On January 23, 2009, Holcim notified BR Tank by certified mail
that it had decided to terminate the lease upon the expiration of
the primary term of the lease on July 4, 2009.[13]  Holcim has
provided an affidavit from Patrick James Roesler, Holcim's Manager
of Terminal Operations, stating that "Holcim received no

_____

[7]Id. at pp. 11-12 of 14.

[8]Lease Agreement, Exhibit B to Defenses, Answer and
Counterclaim, Docket Entry No. 4, § XII; First Amendment to Lease
Agreement, Exhibit B to Defenses, Answer and Counterclaim, Docket
Entry No. 4, p. 12 of 14, § B.

[9]Assignment and Assumption Agreement, Exhibit A to Defenses,
Answer and Counterclaim, Docket Entry No. 4.

[10]Id.

[11]Id. § 3.

[12]Id. §§ 2(b), 2(c).

[13]Letter from Kathleen M. Shanteau to BR Tank, January 23,
2009, Exhibit A to Memorandum in Support of Motion to Transfer,
Docket Entry No. 3, p. 25 of 25.

notification or information, written or oral, of any renewal or extension of the lease prior to his [January 23, 2009] letter to BR Tank and Kinder Morgan."[14]

On February 26, 2009, BR Tank responded by letter to the termination notification, stating:

> We were very surprised to receive your letter in that we were under the impression that the Lease had already been extended for the first 10-year renewal term set forth in the First Amendment.  We are sorry for the confusion and hereby elect to renew the Lease for a further term of ten years (ending July 4, 2019).  As you know, we would not have agreed to have made the various improvements required by you in the Assignment and Assumption Agreement for such a short period.[15]

Holcim responded to BR Tank's letter with a March 13, 2009, letter stating:

> As stated in Article II.2 in the First Amendment, BR Tank agreed to give Holcim written notice to renew at least 180 days prior to the end of the primary term of the lease (July 4, 2009).  We did not receive such notification, and have decided to terminate your Lease effective upon the expiration of the term July 4, 2009.[16]

Holcim has also provided affidavit testimony from Harold David Baker, Holcim's Terminal Manager at the Baton Rouge facility, suggesting that BR Tank's barge at the site had sunk, and stating

---

[14]Affidavit of Patrick James Roesler, Exhibit A to Memorandum in Support of Motion to Transfer, Docket Entry No. 3, p. 2.

[15]Letter from W. Yandell Rogers, III, to Kathleen M. Shanteau, February 26, 2009, Exhibit A to Memorandum in Support of Motion to Transfer, Docket Entry No. 3, p. 3 of 25.

[16]Letter from Kathleen Shanteau to W. Yandell Rogers, III, March 13, 2009, Exhibit A to Memorandum in Support of Motion to Transfer, Docket Entry No. 3, p. 4 of 25.

that "Holcim notified BR Tank of the barge's sinking and other deteriorating conditions which posed a danger to Holcim's operations."[17]

BR Tank filed this action on July 2, 2009 (Docket Entry No. 1). On September 24, 2009, Holcim filed its Motion to Transfer the action to the Middle District of Louisiana (Docket Entry No. 3). Holcim has also filed a counterclaim against BR Tank seeking damages for BR Tank's failure to quit the premises.[18]

## II. <u>Analysis</u>

Holcim has moved for a transfer of venue to the Middle District of Louisiana arguing that that district will be more convenient to the parties because the terminal facilities at issue are located within that district. BR Tank opposes transfer arguing that Holcim has not demonstrated that the Middle District of Louisiana is clearly more convenient to the parties than is the Southern District of Texas.

## A.   Applicable Law

Section 1404(a) allows district courts to transfer an action to another proper venue "for the convenience of parties and witnesses" if such a transfer will be "in the interest of justice."

---

[17]Affidavit of Harold David Baker, Exhibit B to Memorandum in Support of Motion to Transfer, Docket Entry No. 3, ¶ 9.

[18]Defenses, Answer and Counterclaim, Docket Entry No. 4, pp. 3-6.

28 U.S.C. § 1404(a) (2009).  The preliminary question under § 1404(a) is whether a civil action might have been brought in the proposed venue.  <u>In re Volkswagen of America, Inc.</u>, 545 F.3d 304, 312 (5th Cir. 2008).  Whether a venue is proper is determined under 28 U.S.C. § 1391 when no special, restrictive venue statute applies.  <u>Id.</u>  If venue in the proposed district would have been proper, the court must then determine "whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice."  <u>Id.</u> at 315.  The Fifth Circuit has noted that because a plaintiff's choice of forum should bear some weight in a transfer analysis, the movant must show "good cause" in order to obtain a transfer.  <u>Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.</u>, 321 F.2d 53, 56 (5th Cir. 1963).  To show "good cause" the movant must show that the desired venue is "clearly more convenient" than the venue chosen by the plaintiff:

> [W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.  When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.  <u>In re Volkswagen</u>, 545 F.3d at 315.

The Fifth Circuit has provided a non-exclusive list of private and public interest factors, none of which are given dispositive weight, for courts to use in determining whether a given venue is "clearly more convenient" than another.  <u>Id.</u>  The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the

attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Id. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws and of the application of foreign law. Id.

The Fifth Circuit has also made clear that the factor of "location of counsel" is irrelevant and improper for consideration in determining the question of transfer of venue. In re Horseshoe Entm't, 337 F.3d 429, 434 (5th Cir. 2003).

**B.  Venue in the Middle District of Louisiana Would Be Proper**

The preliminary question in considering this transfer motion is whether the action could properly have been brought in the Middle District of Louisiana. See In re Volkswagen, 545 F.3d at 312. The relevant venue statute provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2009). Because this action concerns a property interest located in the Middle District of Louisiana, and a substantial part of the events or omissions giving rise to the

claim occurred there, the court concludes that under 28 U.S.C.
§ 1391(a) venue for this action would be proper in the Middle
District of Louisiana.

## C.    The Private Interest Factors

The private interest factors that courts must consider
regarding the convenience of parties and witnesses are:  (1) the
relative ease of access to sources of proof; (2) the availability
of compulsory process to secure the attendance of witnesses;
(3) the cost of attendance for willing witnesses; (4) all other
practical problems that make trial of a case easy, expeditious, and
inexpensive.  In re Volkswagen, 545 F.3d at 315.  As to the first
factor, it appears likely that a transfer to the district in which
the disputed facilities are located would facilitate access to
sources of proof.  While this action potentially could involve
witnesses based in Georgia, Louisiana, Massachusetts, Michigan,
Mississippi, and Texas, the one location to which they all share a
connection is the terminal in Baton Rouge.  Holcim still has
employees at the terminal facilities; and, although BR Tank states
that all of its employees are based in Houston, the fact that it
has brought this action suggests that it desires to maintain a
business interest in Baton Rouge.  Also, issues related to the
physical aspects of the facility, such as the improvements made by
BR Tank subsequent to its assumption of the lease and the
deterioration of the facilities alleged by Holcim, can most easily

be ascertained in Baton Rouge.  The court therefore concludes that a transfer to the Middle District of Louisiana would improve ease of access to sources of proof.

Considering the second and third factors, the court is not persuaded that these factors weigh for or against a transfer of venue.  There does not appear to be any reason why a lack of compulsory process would prevent the attendance of necessary witnesses if the action is transferred.  BR Tank states that all of its own employees are based in Texas, but since BR Tank is the plaintiff it presumably will not require compulsory service to obtain the attendance of its own employees.  It appears that Holcim has employees in Georgia, Michigan, and Mississippi who could potentially be called as witnesses, but a transfer from Texas to Louisiana will not make it easier or harder to obtain the attendance of these witnesses.  BR Tank has argued that obtaining the attendance of the Kinder Morgan employee who negotiated the Assumption Agreement with BR Tank would be easier in Texas because that employee currently resides in Houston.  While this may be the case, the court notes that Kinder Morgan Bulk Terminals is headquartered in Sorrento, Louisiana, and is therefore subject to compulsory process in Louisiana.[19]  The court is not persuaded that

_____

[19]See First Amendment to Lease Agreement, Exhibit B to Defenses, Answer and Counterclaim, Docket Entry No. 4, p. 11 of 14 (identifying the headquarters of Kinder Morgan Bulk Terminals as Sorrento, Louisiana).

a transfer to Louisiana would impede access to necessary witnesses. This factor is therefore neutral.

The court is also unpersuaded that transferring the action to Louisiana would necessarily increase the cost of attendance of willing witnesses.  As stated above, this action could potentially involve witnesses from several states, but the one factor they all share is a connection to the terminal facilities in Baton Rouge. Since it appears likely that many of the potential fact witnesses in this case would be current or former employees of either the Holcim facilities or the BR Tank facilities in Baton Rouge, the court concludes that transferring the case to the Middle District of Louisiana is just as likely to decrease the cost of attendance as it is to increase it.  Therefore, this factor is neutral.

As to the fourth factor, the court concludes that it would be more convenient for a dispute over leased terminal facilities to be resolved in a courtroom near the facilities than in a courtroom hundreds of miles away.  Therefore, the fourth factor generally supports transfer.

D.    **The Public Interest Factors**

Courts consider the following public interest factors in determining whether to grant a venue transfer: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the

-10-

case; and (4) the avoidance of unnecessary problems of conflict of laws and of the application of foreign law.

BR Tank argues that the first factor militates strongly against transfer, citing a statistic that the median time from filing to final disposition of a case in the Middle District of Louisiana in 2008 was 166.4 months.[20]  BR Tank argues that this "dramatic increase in case congestion" has resulted from a vacant judgeship.[21]  The court has reviewed the Judicial Caseload Profile for the Middle District of Louisiana, and has concluded that the 166.4-month number is not representative of what a litigant could expect in that court today.  Holcim has provided affidavit testimony that the unusually high median times to resolution in 2007 and 2008 were statistical aberrations due to the belated dismissals of thousands of dormant cases originating from the same event in 1993.[22]  The statistics in the Judicial Caseload Profile are consistent with that explanation, showing several thousand civil cases over three years old pending in the years preceding 2007, and then the termination of several thousand cases in 2007 and 2008.[23]  The court is confident that the median time to

---

[20]Plaintiff's Response to Defendant's Motion to Transfer Venue, Docket Entry No. 5, ¶ 18.

[21]Id.

[22]Affidavit of Jonathan David Shaver, Exhibit to Memorandum of Holcim (US) Inc. in Reply to the Opposition of BR Tank to Motion to Transfer, Docket Entry No. 9.

[23]Judicial Caseload Profile for the Middle District of Louisiana, attached to Plaintiff's Response to Defendant's Motion to Transfer Venue, Docket Entry No. 5.

resolution of cases filed in the Middle District of Louisiana in 2009 will be closer to the historical range in the years preceding 2007, or somewhere between 6.4 and 11.8 months.[24]   The court concludes, therefore, that court congestion is not likely to be a problem for new cases transferred to the Middle District of Louisiana.   The factor of administrative difficulties from court congestion is neutral.

The second public interest factor, that of localized interest in the dispute, favors transfer.   The efficient functioning of terminal facilities along the Mississippi River in Baton Rouge is of substantial local interest in the Middle District of Louisiana, where the facilities' employees live and work and where other local businesses have dealings with the terminal.   There is comparatively little local interest in Texas in these Louisiana facilities.

The third factor, familiarity with forum law, also favors transfer.   The agreements specify that they are governed by Louisiana law.   While this court is capable of adjudicating legal issues under Louisiana law, a court in Louisiana will be more familiar with the intricacies of local contract jurisprudence.

Because this dispute does not appear to involve problems of conflict of laws, the court deems the fourth public interest factor to be neutral.

---

[24] Id.

-12-

E.    **Conclusion**

The court concludes that two private interest factors support transfer while the other two are neutral.   The court further concludes that two of the public interest factors support transfer while the other two are neutral.  Weighing these factors, the court concludes that transferring this action to the Middle District of Louisiana would clearly be more convenient to the parties and witnesses than would retaining the action in the Southern District of Texas.   Therefore, Holcim has met its burden of showing good cause for a transfer of venue.

### III.   **Conclusion and Order**

For the reasons stated above, the court concludes that transfer to the United States District Court for the Middle District of Louisiana is appropriate under 28 U.S.C. § 1404(a). Accordingly, Holcim's Motion to Transfer (Docket Entry No. 3) is **GRANTED**, and this action is **TRANSFERRED** to the United States District Court for the Middle District of Louisiana.

**SIGNED** at Houston, Texas, on this 12th day of November, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE